[Cite as *Haven v. Haven*, 2012-Ohio-5347.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STEPHEN HAVEN | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 12-COA-013 |
| THERESE HAVEN | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Ashland County Court of
                             Common Pleas, Domestic Relations
                             Division, Case No. 10-DIV-157

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      November 9, 2012

APPEARANCES:

For Appellant:                       For Appellee:

JEFFREY V. HAWKINS                   MELISSA K. TOMMELLEO
One Cascade Plaza, Suite 2210        76 N. Mulberry St.
Akron, OH 44308-1135                 Mansfield, OH 44902

*Delaney, P.J.*

{¶1} Plaintiff-Appellant Stephen Haven appeals the March 28, 2012 Decree of Divorce issued by the Ashland County Court of Common Pleas, Domestic Relations Division.

## FACTS AND PROCEDURAL HISTORY

{¶2} Plaintiff-Appellant Stephen Haven ("Husband") and Defendant-Appellee Therese Haven ("Wife") were married on July 3, 2004. Husband filed a complaint for divorce on July 30, 2010. The matter came on for hearing before the magistrate on May 26, 2011. The issues at the hearing were the division of the marital home and the appropriateness of a distributive award, the division of certain personal property, and spousal support.

{¶3} The parties stipulated the duration of the marriage was from July 3, 2004 through May 26, 2011. No children were born as issue of the marriage. Husband has two children from a previous marriage. Wife has four children from a previous marriage. At the time of the magistrate's hearing, the children were in either high school or college.

{¶4} At the time of the divorce, Husband was 54 years old and in good health. Husband has two master's degrees and a doctorate. He is employed at Ashland University as the director of the graduate creative writing program in poetry and creative nonfiction, earning $66,000 as a base salary and $10,000 as a summer supplemental income for being the director of the program. Ashland University determines yearly whether Husband will continue as the director of the program. If

Husband were not selected to direct the program, he would continue as a professor at Ashland University.

{¶5} Wife was 50 years old and in good health. Wife has a master's degree in business administration. She is employed at Benedictine High School with an annual income of $57,600. Wife was unemployed from August 2010 to January 2011.

{¶6} Prior to the marriage, the parties owned separate residences. Husband owned a home on Smith Road in Ashland, Ohio ("Smith Road Home"). Wife owned a home on Michaels Road in Fremont, Ohio ("Michaels Road Home"). The parties became engaged in 2003. Wife listed the Michaels Road Home for sale and the parties resided together at the Smith Road Home. Survivorship deeds were prepared for both parties' names to be added to the deeds of the Smith Road and Michaels Road homes.

{¶7} Husband and Wife determined the Smith Road Home was too small for the family of eight. The Smith Road Home was placed on the real estate market and the parties commenced construction on a home located on Williamsburg Court, Ashland, Ohio ("Williamsburg Court Home"). In order to finance the construction of the Williamsburg Court Home, Wife took out a bridge loan on the Michaels Road Home. The Michaels Road Home sold in 2006. The bridge loan was paid off and Wife earned $100,000 as profit from the sale of the Michaels Road Home. The $100,000 was used as a down payment on the Williamsburg Court Home.

{¶8} At the time of the marriage, Husband had a line of credit on the Smith Road Home with a balance of $12,117.98. The line of credit on the Smith Road Home was solely in Husband's name and Wife had no access to this account. Prior to the

sale of the Smith Road Home, the parties moved to the Williamsburg Court Home. The Smith Road Home was sold in 2008. At the time of the sale, the balance of the line of credit on the Smith Road Home was $27,006.10.

{¶9} In 2006, the parties opened a home equity line of credit with the Williamsburg Home in the amount of $100,000. The HELOC was used to (1) pay off Husband's premarital credit card debt for $8,350; (2) to purchase a 2006 Ford Taurus for $10,632.90; (3) to retire the $27,006.10 owed on Husband's line of credit on the Smith Road Home to complete the sale of that home; and (4) for the children's educational expenses and wedding expenses in the amount of $42,500. Wife argued it was her intention to use the $100,000 HELOC for the children's college education only. Husband made $22,032.69 in payments against the HELOC.

{¶10} The parties stipulated Husband would receive the 2006 Ford Taurus.

{¶11} The magistrate's decision was issued on October 26, 2011. Relevant to this appeal, the magistrate recommended that Husband pay Wife a distributive award of $23,956.31. The amount represented $8,350 of Husband's premarital credit card debt, $10,632.90 for the Ford Taurus, $27,006.10 for the Smith Road House line of credit, and less the $22,032.69 of Husband's payments to the Williamsburg Court Home HELOC.

{¶12} The magistrate further recommended it was reasonable and appropriate for Husband to pay Wife spousal support in the amount of $500 per month for twelve months.

{¶13} Husband filed objections to the magistrate's decision. The trial court filed a judgment entry on February 2, 2012 overruling Husband's objections and

adopting the magistrate's decision. A final decree of divorce was filed on March 28, 2012.

{¶14} It is from this decision Husband now appeals.

**ASSIGNMENTS OF ERROR**

{¶15} Husband raises three Assignments of Error:

{¶16} "I. THE TRIAL COURT ERRED IN SUSTAINING THE MAGISTRATE'S DECISION THAT ISSUED A DISTRIBUTIVE AWARD IN FAVOR OF THE DEFENDANT/APPELLEE AND AGAINST THE PLAINTIFF/APPELLANT.

{¶17} "II. THE TRIAL COURT ERRED IN SUSTAINING THE MAGISTRATE'S DECISION THAT AWARDED SPOUSAL SUPPORT IN FAVOR OF THE DEFENDANT/APPELLEE.

{¶18} "III. THE TRIAL COURT ERRED IN SUSTAINING THE MAGISTRATE'S DECISION THAT FOUND THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ALLOW A DISTRIBUTIVE AWARD TO THE DEFENDANT/APPELLEE AND AGAINST THE PLAINTIFF/APPELLANT."

**ANALYSIS**

I., III.

{¶19} We consider Husband's first and third Assignments of Error together because the assignments raise the $23,956.31 distributive award given to Wife. Husband argues the trial court erred in ordering Husband to pay a distributive award to Wife because the evidence was insufficient to support such an award. We disagree.

{¶20} R.C. 3105.171(B) requires the trial court to determine what constitutes marital property and what constitutes separate property. "In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses * * *." R.C. 3105.171(B). The Revised Code further requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. R.C. 3105.171(E)(1). Under R.C. 3105.171(F), the trial court must consider the following factors in determining whether to make and the amount of a distributive award:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

Husband has not made any argument that the trial court failed to properly apply R.C. 3105.171(F) in making the distributive award.

{¶21} Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry*, 66 Ohio St.2d 348, 421, 421 N.E.2d 1293 (1981), paragraph two of the syllabus. A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶22} We review a trial court's classification of property as marital or separate under a manifest weight of the evidence standard and we will affirm if some competent, credible evidence supports the classification. *Thomas v. Thomas*, 5th Dist. No. 11CAF090079, 2012-Ohio-2893, ¶ 31 citing *Taub v. Taub*, 10th Dist. No. 08AP750, 2009-Ohio-2762, ¶ 15. Valuing property involves factual inquiries and also requires an appellate court to apply a manifest weight of evidence standard of review. *Wright v. Wright*, 4th Dist. No. 94CA02, 1994 WL 649271 (November 10, 1994). An

appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶23} Husband argues the distributive award was in error because while the $100,000 from the sale of the Michaels Road Home was Wife's separate property, when Wife used that property as a down payment on the Williamsburg Court Home, it became comingled with marital property and was no longer traceable as separate property. Husband further argues the debts paid with the $100,000 were marital debts and not Husband's separate debts. "Pursuant to R.C. 3105.171(B), a spouse's separate property should be distributed to that spouse and it is error to award separate property as marital property." *Furman v. Furman*, 10th Dist. No. 10AP-407, 2011-Ohio-6558, ¶ 25 citing *Colley v. Colley*, 10th Dist. No. 09AP-333, 2009-Ohio-6776. "When assessing whether an asset is marital property or separate property, the presumption is that an asset acquired during the course of marriage is martial property unless proved otherwise. R.C. 3105.171(A)(6)(b). A party in a divorce action requesting classification of a commonly-held asset as separate property, therefore, bears the burden of tracing that asset to his or her separate property. *Dunham v. Dunham*, 171 Ohio App.3d 147, 870 N.E.2d 168, 2007–Ohio–1167, ¶ 20." *Furman, supra*.

{¶24} The distributive award was based on the sale of the Michaels Road Home. The Michaels Road Home sold in 2006 and Wife earned $100,000 as profit from the sale of the Home. The $100,000 was used as a down payment on the

Williamsburg Court Home. Husband does not dispute the $100,000 from the sale of the Michaels Road home was Wife's premarital asset.

{¶25} In 2006, the parties opened a home equity line of credit with the Williamsburg Home in the amount of $100,000. The HELOC was used to (1) pay off Husband's premarital credit card debt for $8,350; (2) to purchase a 2006 Ford Taurus for $10,632.90; (3) to retire the $27,006.10 owed on Husband's line of credit on the Smith Road Home to complete the sale of that home; and (4) for the children's educational expenses and wedding expenses in the amount of $42,500. Wife argued it was her intention to use the $100,000 HELOC for the children's college education only. Husband made $22,032.69 in payments against the HELOC.

{¶26} The magistrate's decision recommended that Husband pay Wife a distributive award of $23,956.31. The amount represented $8,350 of Husband's premarital credit card debt, $10,632.90 for the Ford Taurus, $27,006.10 for the Smith Road House line of credit -- less the $22,032.69 of Husband's payments to the Williamsburg Court Home HELOC.

{¶27} Husband states the evidence show the debts paid by the Williamsburg Court Home HELOC were debts incurred after the marriage on July 3, 2004. We will examine each debt based on the evidence presented at trial.

{¶28} *(A) $8,350 Credit Card Debt*

{¶29} Husband argues there is no evidence that the $8,350 debit from the Williamsburg Court Home HELOC was Husband's premarital debt. He states the $8,350 listed on the HELOC account statement as a cash advance is insufficient to establish it was Husband's debt. Wife testified at trial it was her recollection that the

$8,350 was used to pay off the balance of Husband's credit card that had zero percent interest for twelve months. The twelve month period was to expire and the parties used the Williamsburg Court Home HELOC to pay off the balance of the credit card. (T. 70-71.) Husband did not provide any details in his testimony as to the origin of the $8,350 debt.

{¶30} *(B) $10,632.90 Ford Taurus Purchase*

{¶31} The 2006 Ford Taurus was purchased during the marriage with funds from the Williamsburg Court Home HELOC. Husband primarily drove the vehicle. Wife testified she disagreed with the purchase of the vehicle, and she disagreed with the use of the Williamsburg Court Home HELOC to purchase the vehicle because the HELOC was to be used for the children's education. (T. 68-69). In the parties' stipulations to the divorce decree, the parties agreed Husband would receive the Ford Taurus.

{¶32} *(C) $27,006.10 Smith Road Home Line of Credit Payoff*

{¶33} At the time of the parties' marriage, the line of credit on the Smith Road Home was $12,117.98. Only Husband had access to this line of credit. At the time of the sale of the Smith Road Home, the line of credit was $27,006.10.

{¶34} Husband testified the line of credit was used for family expenses. (T. 38.) The Smith Road Home line of credit was also used to pay mortgage and other expenses on the Smith Road Home, because for a period of time, the parties owned both the Smith Road Home and the Williamsburg Court Home. (T. 37-38). Wife testified she had no control over the Smith Road Home line of credit. She discussed

with Husband that the sale price of the Smith Road Home should be lowered rather than incurring further expenses on the line of credit. (T. 63-64).

{¶35} There is no dispute the $100,000 profit from the sale of the Michaels Road Home was Wife's separate property and that separate property was used as a down payment on the Williamsburg Court Home. A HELOC was then established on the Williamsburg Court Home in the amount of $100,000. Certain debts incurred before and during the marriage were paid from the Williamsburg Court Home HELOC, of which caused the trial court to grant Wife a distributive award in order to effectuate a fair and equitable distribution of the marital and separate property and debt.

{¶36} Based on the evidence presented, we find no abuse of discretion in the trial court's division of the separate and marital property and debt. The trial court's determinations are supported by competent and credible evidence.

{¶37} Husband's first and third Assignments of Error are overruled.

II.

{¶38} Husband argues in his second Assignment of Error the trial court erred in granting Wife spousal support in the amount of $500 per month for twelve months.

{¶39} A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶40} R.C. 3105.18(C)(1)(a) through (n), which sets forth the factors a trial court is to consider in determining whether spousal support is appropriate and

reasonable and in determining the nature, amount, terms of payment, and duration of spousal support, provides:

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶41} In his decision, the magistrate considered the parties' factual stipulations, the educational backgrounds, and employment histories. Husband has two master's degrees and a doctorate. He works at Ashland University earning $66,000 per year and $10,000 as a supplemental income for directing the graduate creative writing program in poetry and creative nonfiction. Husband foresees he will be the director of the program for at least one year. Wife has her master's degree in business administration. She was unemployed from August 2010 to January 2011, but now currently earns $57,600 at Benedictine High School. The parties divided their

retirement benefits. The parties were married seven years and enjoyed an upper middle class standard of living during their marriage.

{¶42} We find the trial court considered the appropriate factors and did not abuse its discretion in ordering Husband to pay Wife spousal support in the amount of $500 per month for twelve months.

{¶43} Husband's second Assignment of Error is overruled.

**CONCLUSION**

{¶44} The three Assignments of Error of Plaintiff-Appellant Stephen Haven are overruled.

{¶45} The judgment of the Ashland County Court of Common Pleas, Domestic Relations Division is affirmed.

By: Delaney, P.J.

Gwin, J. and

Hoffman, J. concur.

HON. PATRICIA A. DELANEY

HON. W. SCOTT GWIN

HON. WILLIAM B. HOFFMAN

PAD:kgb

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| STEPHEN HAVEN | : | |
| | : | |
| Plaintiff - Appellant | : | JUDGMENT ENTRY |
| | : | |
| -vs- | : | |
| | : | Case No.    12-COA-013 |
| THERESE HAVEN | : | |
| | : | |
| Defendant - Appellee | : | |
| | : | |

For the reasons stated in our accompanying Opinion on file, the judgment of the Ashland County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN